**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Bankruptcy Case 23-81174 |
| Tammy Coakley, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | Judge Lynch |
| ) | |
| Crystal Lake Bank & Trust ) | |
| Company, N.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 24-96007 |
| ) | |
| Tammy Coakley, ) | |
| ) | |
| Defendant. ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Crystal Lake Bank & Trust Company, N.A. (the "Bank") seeks a
determination that the Debtor's judgment debt is nondischargeable under sections
523(a)(2)(A) and (a)(4) of the Bankruptcy Code.  The Bank's adversary complaint (the
"Complaint") alleges that the Debtor committed actual fraud by transferring funds to
others in two transactions with intent to hinder or delay the Bank's ability to collect
its debt or judgment.  Ms. Coakley moves to dismiss the Complaint for failing to state
a claim upon which relief can be granted under Fed. R. Civ. P. 12(b), arguing that the
first transaction was a payment of a legitimate debt and a claim of actual fraud

cannot be based on such a payment. She further argues that the Complaint fails to plead fraud with sufficient particularity to satisfy Fed. R. Civ. P. 9(b).

Having reviewed the Complaint and the papers submitted and having considered the oral argument of counsel in open court, the Court will deny the motion.

## RELEVANT BACKGROUND

In evaluating a motion to dismiss for failure to state a claim, the court tests "the sufficiency of the complaint, not the merits of the case." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 885 (7th Cir. 2022). The court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Id.* The following description is based on the factual allegations found in the Complaint, taking note where appropriate of the arguments raised in connection with the motion and judicial notice of the Court's docket.

On September 27, 2023, the Debtor filed her voluntary petition under chapter 7 of the Bankruptcy Code. Seven months later, the Bank commenced this adversary proceeding. Its Complaint alleges that on February 16, 2023, the Bank obtained a pre-petition money judgment against Ms. Coakley from the Kane County, Illinois circuit court. The judgment, in the amount of $234,765.30, is based on Ms. Coakley's liability on two guarantees. The first involves a March 2, 2017 guaranty of a $198,000 loan by the Bank to Inspire Bleu Beauty + Wellness, LLC. The second concerns her April 12, 2017 guaranty of the Bank's $260,000 loan to Bleu Root, LLC. Ms. Coakley is alleged to hold an interest in both businesses.

The Complaint also states that two of the Debtor's other businesses, Hesperus Peak, Inc. and Blue'spa, Inc., filed bankruptcy petitions on May 28, 2020. It alleges that the "failure of the [Debtor's] businesses, including the . . . bankruptcy filings, constituted defaults under [her] Guarantees." (Compl. ¶ 15.) On August 31, 2021, the Debtor and her husband, Richard Coakley, sold jointly owned real property in Carpentersville, Illinois, for $300,000. The Complaint alleges that the Debtor caused the total net sale proceeds, $187,437.36, to be deposited into a bank account owned solely by Richard. (*Id.* ¶ 18.) The Complaint further alleges that the Debtor "paid $90,000 towards three of her federal student loans" on December 2, 2022. (*Id.* ¶ 20.)

To attempt to collect its judgment the Bank initiated supplementary proceedings against the Debtor in the circuit court in August 2023. A month later the Debtor commenced her bankruptcy case. The chapter 7 trustee conducted the meeting of creditors and on January 30, 2024, he reported no non-exempt property is available for distribution and the bankruptcy estate is fully administered. The Bank's money judgment remains unsatisfied.

Count I avers that the Debtor caused the real estate proceeds to be deposited in her husband's bank account in order to conceal those funds from the Bank. It contends that Richard Coakley is an insider of the Debtor and that the Debtor has maintained some degree of control over the sale proceeds after they were deposited. It further alleges the proceeds constitute substantially all of the Debtor's assets, she received nothing in return for the transfer into Richard's account, and she had defaulted on her guarantees and was insolvent at that time (or shortly thereafter).

Count II alleges that the Debtor made the $90,000 student loan payment "to ensure those funds would not be paid to the [Bank]." (*Id.* ¶ 36.)  The Complaint argues this constitutes fraud under section 523(a)(2)(A) because the Debtor's payment was not disclosed to the Bank, it constituted substantially all of her assets, she was insolvent at the time (or shortly thereafter) and was then subject to the breach of guarantee lawsuit, and the payment occurred shortly before entry of the money judgment against her.  Both counts rely on 740 ILCS 160/5(a) to argue the transfers were made "or the obligation incurred . . . with actual intent to hinder, delay, or defraud." (*Id.* ¶¶ 28, 34; *see also id.* ¶¶ 29-30, 35-36.)

## JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).  Venue is proper under 28 U.S.C. § 1409(a).

## DISCUSSION

### A. Legal Standard

The Debtor seeks to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6), made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7012.  In resolving a motion to dismiss under Rule 12(b)(6), the court considers well-pleaded facts and the reasonable inferences drawn from them in the light most favorable to the plaintiff. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).  In ruling on the motion, every well-pleaded allegation is taken as true.  However, the complaint must "state a claim to relief that is plausible on its face." *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   The factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555).

The factual allegations must be more than "mere legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*   However, at the pleadings stage a court must "accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Id.*  A "complaint survives a motion to dismiss 'even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Kahn v. Walmart Inc.*, 107 F.4th 585, 594 (7th Cir. 2024) (quoting *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013)).   Where a claim sounds in fraud, Rule 9(b) requires the pleading to "state with particularity the circumstances constituting fraud," which "'ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Id.* (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)).   On the other hand, "even Rule 9(b) allows malice, intent, knowledge, and other conditions of a person's mind to be alleged 'generally.'" *Id.*

Counts I and II are brought under section § 523(a)(2)(A) which excepts from discharge any debt of an individual debtor "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).   The

Complaint asserts that both the transfer of the real estate sale proceeds and the student loan payment constitute actual fraud. The Supreme Court has explained that the "term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 359 (2016). The statute's provision for actual fraud does not apply to "'implied' fraud or fraud 'in law,' which describe acts of deception that 'may exist without the imputation of bad faith or immorality.'" *Id.* (quoting *Neal v. Clark*, 95 U.S. 704, 709 (1878)). Instead, "actual fraud" refers to "anything that counts as 'fraud' and is done with wrongful intent" – applying to fraud that "involv[es] moral turpitude or intentional wrong." *Id.*

The Complaint invokes the Illinois Fraudulent Transfer Act, 740 ILCS 160/5, for fraud allegations. The Illinois statute provides that a

> transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor.

740 ILCS 160/5. Actual fraud "occurs when the debtor has the specific intent to hinder his creditors." *Desmond v. Taxi Affiliation Servs. LLC*, 344 F. Supp. 3d 915 (N.D. Ill. 2018). For purposes of Rule 9(b) this requires that the plaintiff "identify the property involved and the time frame in which the transfers occurred." *Id.*

Allegations of so-called "badges of fraud" in a complaint can indicate the plausibility of fraudulent intent. *Id.* Badges of fraud are a form of circumstantial evidence that may be used to prove actual intent because "[d]irect proof of actual intent to defraud is . . . hard to come by." *In re Frierdich*, 294 F.3d 864, 870 (7th Cir.

2002).   The Illinois' Uniform Fraudulent Transfer Act lists eleven badges of fraud.

*See Brandon v. Anesthesia & Pain Mgmt. Assocs.*, 419 F.3d 594, 600 (7th Cir. 2005).

> (b) In determining actual intent under paragraph (1) of subsection (a), consideration may be given, among other factors, to whether:
>
> > (1)   the transfer or obligation was to an insider;
> > (2)   the debtor retained possession or control of the property transferred after the transfer;
> > (3)   the transfer or obligation was disclosed or concealed;
> > (4)   before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> > (5)   the transfer was of substantially all the debtor's assets;
> > (6)   the debtor absconded;
> > (7)   the debtor removed or concealed assets;
> > (8)   the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> > (9)   the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> > (10)   the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> > (11)   the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5(b).   The Seventh Circuit cautions that the badges-of-fraud nomenclature is "an unfortunate legal cliché that like many such can exercise a mesmerizing force on lawyers and judges," and that the statute's non-exhaustive list of "common symptoms" is "not additive." *Brandon*, 419 F.3d at 600.   Courts "are not constrained by" the statute's list "and need not consider every factor" or "may consider other factors not enumerated in section 5(b)."   The "presence of one or more factors . . . is not conclusive evidence of fraud." *People ex rel. Dep't of Hum. Rts. v. Oakridge Healthcare Ctr., LLC*, 2020 IL 124753, ¶ 37.[1]

---

[1] The Illinois Supreme Court has explained that badges of fraud under prior statutes and the common law "do not in themselves constitute fraud, but are rather signs or indicia from which the existence of

The Illinois Uniform Fraudulent Transfer Act "does not contain any provision that purports to expressly abrogate any portion of the common law [and] to the contrary, section 11 of the Act contains a provision expressing a clear intent to preserve common law remedies" including "'*the law relating to . . . fraud.*'" *Rush Univ. Med. Ctr. v. Sessions*, 2012 IL 112906, ¶ 18 (emphasis added) (quoting 740 ILCS 160/11). The "general purpose of the Act is 'to protect a debtor's unsecured creditors from unfair reductions in the debtor's estate to which creditors usually look to security.'" *Id.* (quoting *In re Randy*, 189 B.R. 425 (Bankr. N.D. Ill. 1995)).

Here, both counts of the Complaint allege several badges of fraud to assert that the transfer of sale proceeds to the Debtor's husband and her student loan payments were made with actual intent to hinder, delay, or defraud the Bank. These include the allegations in Count I that: the transferee, Debtor's husband, is an insider; the Debtor maintained control over the sale proceeds; the transfer was not disclosed to the Bank, was concealed and occurred after default in the Debtor's obligations to the Bank; the Debtor received no consideration in return for the transfer; and the proceeds were substantially all of the Debtor's assets and the Debtor was insolvent at the time of the transfer or shortly thereafter. (Compl. ¶ 30.) In Count II, the Complaint also alleges that the student loan payment was not disclosed to the Bank, and that the payment was made while the breach-of-guarantee lawsuit was pending

---

fraud may be properly inferred as a matter of evidence." *Zwick v. Catavenis*, 331 Ill. 240, 248 (1928). The Court further explained that "[b]adges of fraud are not conclusive but are strong or weak, according to their number and concurrence in the same case" and "may be overcome by evidence establishing the bona fides of the transaction." *Id.* As such, generally whether "badges of fraud shown in the evidence are sufficient to establish the fact that the conveyance in question was fraudulent is a matter for the jury to decide." *Id.*

and shortly before entry of a money judgment in favor of the Bank. (*Id.*) It also avers that the payment constituted substantially of the Debtor's assets, ensured the funds would not be paid to the Bank, and was made while or shortly before the Debtor became insolvent. (*Id.*)

The Debtor raises two arguments in her motion. First, she asserts that Count II fails to state a claim and must be dismissed because a payment of a non-dischargeable student loan cannot be a debt obtained by actual fraud under section 523(a)(2)(A). (Mot. ¶¶ 7-11, ECF No. 7.) She then generally argues that Counts I and II fail to plead fraud with the particularity required by Rule 9(b). (*Id.* at 9; Reply ¶ 11, ECF No. 11.) For the reasons discussed below, neither argument warrants dismissal.

### B. Illinois Law Does Not Preclude Maintaining a Claim for Actual Fraudulent Transfer for Payments to a Creditor

First, the Debtor contends that the payment of student loans cannot support a claim under section 523(a)(2)(A) because "payment to one class of unsecured creditors in favor of another class of unsecured creditors does not constitute a fraudulent conveyance." (Mot. ¶ 10.) It appears that the Debtor invites the Court to find that a payment of a debt can never be the basis for an actual fraudulent conveyance claim. Illinois law, however, does not support this proposition.

A payment to a creditor generally will not support a claim of *constructive* fraudulent transfer. Section 5(a)(2) of Illinois Uniform Fraudulent Transfer Act provides the right of action for constructive fraudulent transfer. 740 ILCS 160/5(a)(2). That section requires a showing that the transfer was made "without receiving a

reasonably equivalent value in exchange." *Id.* Section 160/4(a) defines "value" to include the satisfaction of an antecedent debt. 740 ILCS 160/4(a). However, the UFTA separately provides for actual fraudulent transfers in subsection 160/5(a)(1). Subsections 160/5(a)(1) and 5(a)(2) are alternative grounds for relief under the UFTA, separated by the disjunctive connector "or." The Complaint only asserts claims based on actual fraud under section 160/5(a)(1) and not constructive fraud.

To be sure, consideration provided through the satisfaction of debt may be relevant as an evidentiary matter to a claim of actual fraudulent transfer under 160/5(a)(1).[2] The Debtor's motion suggests that her motivation in paying the student loans was innocent and not to hinder or harm the Bank. But that is a factual contention, and not an appropriate consideration under Rule 12(b)(6) where all reasonable inferences are to be drawn in favor of the plaintiff. The Complaint alleges numerous other badges of fraud and does rest its claim on the lack of reasonably equivalent consideration. As such its allegations are sufficient to plausibly state a claim for relief for actual fraudulent transfer.

Illinois law has long recognized that payments of debt while insolvent are not per se fraudulent transfers. But it is also well-established that such payments are not per se excluded from claims for actual fraudulent transfer. Nearly a century ago, the Illinois Supreme Court stated:

> While a debtor may prefer a creditor or creditors and such preference is valid notwithstanding the claims of other creditors, provided the debt preferred is actual and the property transferred does not clearly exceed the amount of the claim and the transaction is not a mere device to

---

[2] As noted above, the lack of reasonably equivalent value consideration received is one of the eleven badges of fraud denominated in the Illinois statute. 740 ILCS 160/5(b)(8).

secure an advantage to the debtor to hinder, delay, or defraud other creditors, yet such intent to defraud or to secure by such transfer an advantage to the debtor making it may be implied from the relationship of the parties, taken in connection with other circumstances proved.

*Zwick v. Catavenis*, 331 Ill. 240, 247 (1928).  Similarly, while recognizing the right to prefer one creditor over another through a payment, the Illinois Supreme Court has qualified such right to payments made "in good faith."  In *Thompson v. Williams*, the Court held that a "debtor may prefer one creditor to another, *but such preference must be made in good faith with the intent to pay or secure the payment of a just indebtedness against him.*" 6 Ill. 2d 208, 212 (1955) (emphasis added) (citing *Nelson & Co. v. Leiter*, 190 Ill. 414 (1901); *Frank v. King*, 121 Ill. 250 (1887)).  Such "question of fraudulent intent (or lack of good faith) is a question of fact, which must be established by extrinsic proof," *id.*, making it rarely appropriate as a ground for dismissal under Rule 12(b)(6).[3]

Under the Illinois Uniform Fraudulent Transfer Act, a "debtor may prefer one creditor to another *provided such preference is made in good faith with the intent to pay or secure the payment of a just indebtedness against him.*" *Galesburg 67, LLC v. Nw. TV, Inc.*, No. 15 C 5650, 2017 U.S. Dist. LEXIS 133844, at *25 (N.D. Ill. Aug. 22, 2017) (emphasis added) (quoting *Schacht v. Katten Muchin & Zavis (In re MedCare*

---

[3] Similarly, in discussing an early Texas fraudulent conveyance statute, but noting that "the common law, without the statute, would have worked out the same results," the U.S. Supreme Court held that consideration was not necessarily a full defense to a claim of fraudulent conveyance, explaining:

A sale may be void for bad faith though the buyer pays the full value of the property bought.  This is the consequence, where his purpose is to aid the seller in perpetrating a fraud upon his creditors, and where he buys recklessly, with guilty knowledge.  When the fact of fraud is established in a suit at law, the buyer loses the property without reference to the amount or application of what he has paid, and he can have no relief either at law or in equity.

*Clements v. Moore*, 73 U.S. (6 Wall.) 299, 312 (1868).

*HMO)*, 294 Ill. App. 3d 42, 52 (1997)).  While the court in *Galesburg 67* ultimately determined that the plaintiffs "did not prove by clear and convincing evidence that the transfer in this case was done with actual intent to hinder, delay, or defraud" the plaintiffs, that court reached its conclusion after trial on the merits, not at the pleading stage. *Id.*  In contrast, the appellate court in *Schacht* affirmed dismissal of a fraudulent transfer claim for a debtor's payment of fees owing to counsel for the unsecured creditor's committee in a dismissed bankruptcy case.  However, in that case the court found that the plaintiff (the Director of Insurance for the State of Illinois as liquidator of the HMO debtor's estate) failed to adequately plead that the debtor intended to hinder creditors through the payment of the fees in question.  At best that complaint merely alleged that the law firm transferee was aware that the debtor was insolvent and that "by accepting the transfers from MedCare, [the law firm] actively participated . . . in a scheme" to hinder and delay repayment to other creditors. 294 Ill. App. 3d at 53.  The court found such vague "allegations do not sufficiently allege fraudulent intent." *Id.*  In contrast, here the Complaint expressly alleges that the Debtor transferred funds "to conceal those funds from Crystal Lake Bank" and "to ensure those funds would not be paid to Crystal Lake Bank." (Compl. ¶¶ 30, 36.)  Together with the allegations of several badges supporting an inference of fraud, the Complaint, in contrast to the liquidator's complaint in *Schacht*, plausibly states a claim for relief.

## C. The Adversary Complaint Satisfies Rule 9(b)

The Debtor next argues in her motion that "the Bank does not plead any facts which establish the nexus, relationship or any connection between 'actual fraud'

under Section 523(a)(2)(A) and the Student Loan Payment," asserting that "in a leap of timeframe long after the creation of these credit facilities, the Bank alleges that the Student Loan Payment was 'actual fraud' simply reciting the 'badges of fraud' under the UFTA, without pleading with any particularity the basis or the substance of the fraud." (Mot. ¶ 14.)

The Complaint, however, alleges that the fraud consisted of the particular transfers, and not some form of deceit or misrepresentation at the time of a lending transaction, and the 'who, what, when, where and how' of these transfers is described. The Complaint alleges that the Debtor transferred $185,437.36 into her husband's account sometime around August 31, 2021, and transferred $90,000 to a student loan lender on December 2, 2022.  It further alleges that in each case the Debtor made the transfer with the intent to hinder the Bank's ability to collect its outstanding debt of $234,765.30.  The Debtor has failed to articulate grounds why these allegations and the remaining allegations set forth in the Complaint fail state a claim for actual fraudulent transfer under section 523(a)(2)(A).  *See Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. at 359.

The Debtor's reference to the "leap of timeframe" (Mot. ¶ 14) mirrors an argument made by the dissent in *Husky* which the Court's majority rejected.  The majority noted that as "a basic point, fraudulent conveyances are not an inducement-based fraud," and the "fraudulent conduct is not in dishonestly inducing a creditor to extend a debt. It is in the acts of concealment and hindrance." 578 U.S. at 361-62.[4]

---

[4] The Court in *Husky* did note in a footnote that it "[takes] no position on" and "leave it to the Fifth Circuit to decide on remand whether the debt to Husky was 'obtained by' Ritz' asset-transfer scheme"

The Bank's Complaint is consistent with the majority.  Notably, its prayer for relief does not request that the Court find the entire debt to be non-dischargeable entire alleged debt, but seeks a determination limited to the alleged transfers.[5]

In her reply brief, the Debtor first raises a concern that Counts I and II seek "a double recovery" – arguing that the $90,000 paid to the student lender was traceable to and effectively the same money as the transferred real estate proceeds, such that the Bank should not be entitled to a finding of non-dischargeability of more than $180,000 if successful on both counts. (Reply ¶ 11.)  This newly raised argument, too, fails to warrant dismissal.[6]  First, the argument relies on factual assumptions outside the Complaint, namely, that the transferred funds are the same or traceable to each other.  A motion to dismiss is not the time to raise factual disputes or defenses external to the allegations made in the complaint. *See, e.g., Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022) ("Ordinarily, when adjudicating a motion to dismiss under Rule 12(b)(6), a district court is limited to the allegations in the complaint.").  Second, the Federal Rules, made applicable to this adversary by Fed. R. Bankr. P. 7008, specifically permit a plaintiff to "state as many separate claims or defenses as it has, regardless of consistency," Fed. R. Civ. P. 8(d)(3), or

---

as that phrase is used in Section 523(a)(2). 578 U.S. 355, 365 n.3.  The Debtor does not raise any argument on this point in her motion or reply, and this decision does not consider it.

[5] The prayer for relief also seeks to include interest, attorneys' fees, costs and punitive damages.  The Debtor does not challenge this in her motion, and this Court makes no findings today on any right to or the potential dischargeability of such additional amounts.

[6] Generally, "arguments a party raises for the first time in a reply are forfeited." *In re Khan*, No. 20 B 17315, 2021 WL 5121894, at *2 (Bankr. N.D. Ill. Sept. 7, 2021) (citing *Zylstra v. DRV, LLC*, 8 F.4th 597, 609 (7th Cir. 2021)). Here, however, the court will briefly address the Debtor's concern.

demand "relief in the alternative or different types of relief," Fed. R. Civ. P. 8(a)(3). The Debtor's concerns about the calculation of the relief that may be ultimately granted are premature for this motion on the sufficiency of the Complaint.

## CONCLUSION

Based on the foregoing, the Court finds that the adversary complaint adequately states a claim for relief.  Therefore, the motion to dismiss will be denied.

A separate order will be issued concurrent with this Memorandum Opinion giving effect to the determinations reached herein.

DATE: September 30, 2024

ENTER

Thomas M. Lynch
United States Bankruptcy Judge